119 F.3d 8
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco SOLANO-GODINES, Defendant-Appellant.
 No. 96-10255.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1997
July 21, 1997.
 
 Appeal from the United States District Court for the District of Arizona, Stephen M. McNamee, District Judge. San Francisco, California
 Before REINHARDT, HALL and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Francisco Solano-Godines ("Solano") pleaded guilty to one count of illegal reentry by a deported felon under 8 U.S.C. § 1326(b)(1) and one count of false representation of United States citizenship under 18 U.S.C. § 911.
 
 
 3
 In a separate opinion, we affirmed Solano's conviction, but vacated his sentence and remanded for resentencing. In this memorandum disposition, we resolve two issues we did not address in the separately filed opinion.
 
 
 4
 Solano argues the district court erred in denying (I) his pretrial motion to suppress statements he made to Immigration and Naturalization Service ("INS") inspectors after his arrest, and (II) his motion at sentencing for a downward departure under Sentencing Guideline § 5K2.0 based on his agreement to be deported.
 
 
 5
 I. Suppression of Statements Made While Under Arrest
 
 
 6
 The district court did not err in denying Solano's motion to suppress the statements he made to the INS inspectors while under arrest. The statements he sought to suppress include his confession that he was really Francisco Solano-Godines and a citizen of Mexico.
 
 A. Voluntariness of Confession
 
 7
 Solano contends his confession was involuntary. In determining the voluntariness of a confession, we must determine "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc) (quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Derrick v. Peterson, 924 F.2d 813, 817 (9th Cir.1990) (quoting United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause[.]" Colorado v. Connelly, 476 U.S. 157, 167 (1986).
 
 
 8
 In determining whether a confession is voluntary, we take into consideration all the circumstances surrounding the giving of the confession, including: (1) the time elapsed between arrest and arraignment; (2) the defendant's knowledge of the nature of the offenses for which he was suspected or charged; (3) whether the defendant was advised or knew that he was not required to make a statement and that any statement made could be used against him; (4) whether the defendant was advised of the right to the assistance of counsel; and (5) the presence or absence of counsel when questioned and when making the confession. 18 U.S.C. § 3501(b) (1997). No one factor is necessarily determinative. Id.
 
 
 9
 We agree with the district court that under the totality of the circumstances Solano's confession was voluntary. Solano was told his Miranda rights and he waived those rights well before he confessed. No attorney was present when he confessed, but he never requested an attorney. Solano does not allege, nor is there any evidence, that any of the statements were extracted by use of threat, violence or psychological pressure. While Solano was understandably impatient after being held in custody for ten hours, there is no evidence the delay was intended to provide the inspectors more time to pressure Solano into confessing or to enable them in any way to elicit a confession. Rather, the inspectors were merely awaiting the fingerprint results from the FBI. They had every reason to suspect Solano was guilty either of misrepresenting his identity to them or of escaping from prison, but they needed to confirm his identity to figure out which of these two crimes he had committed.
 
 
 10
 Further, the inspectors did not use coercive tactics. During most of the ten hours, Solano was in a room alone. He was questioned intermittently, but the questioning was not frequent, or long, and there is no evidence that the inspectors applied any undue pressure, psychological or otherwise. The evidence does not show that Solano's free will was overborne. Solano confessed only when he realized that the inspectors had "busted him" (when he was confronted with the fact that the person he claimed to be was currently in jail at Pelican Bay).
 
 B. Waiver of Miranda Rights
 
 11
 We also reject Solano's argument that his waiver of his Miranda rights was invalid because it was not voluntary, knowing and intelligent.
 
 
 12
 A waiver of Miranda rights must be voluntary, knowing and intelligent under the totality of the circumstances. Moran v. Burbine, 475 U.S. 412, 421 (1986).
 
 
 13
 First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.
 
 
 14
 Id. The validity of the Miranda waiver must be determined in each case through an examination of the particular facts and circumstances, including the background, experience, and conduct of the accused. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "An express written ... statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." Id. at 373.
 
 
 15
 Solano argues that his Miranda waiver was involuntary because at the time he signed the form, he was very tired and only wanted to hasten the investigation. He told Inspector Magana that he had been up the whole night before and asked Magana what was taking so long. Magana responded that he "couldn't proceed in any questioning until [Solano] signed ... his waiver of rights." Solano contends this response constituted an improper implied promise that if Solano waived his rights, the investigation would end sooner. We disagree. Magana did not promise, implicitly or otherwise, that the investigation would end sooner if Solano signed the forms. He simply made a true statement that he was unable to question Solano unless Solano waived his Miranda rights.
 
 
 16
 Further, the district court's finding that Solano's waiver was knowing and intelligent was not clearly erroneous. Several agents testified that Solano was of average intelligence and understood both English and Spanish. Solano read the advisement of Miranda rights and waiver of rights provisions on the I-124 form. Inspector Stubbs also read the form to him. She then informed him that he was under arrest and restated his Miranda rights.
 
 
 17
 Although Solano had stated earlier that he did not understand the Miranda warning, the record indicates he understood everything else that was going on throughout the day. When confronted with the fact that the person he claimed to be was supposed to be in prison for murder, he was able to make up a clever story that he was framed for that crime and released from prison after the real killer was caught. His acknowledgment later that "you busted me" shows that he had a good idea of exactly what was going on and had engaged in a deliberate effort to deceive the inspectors. After five hours passed, Solano grew tired and impatient. At 4:00 p.m., when he was told that he could not be questioned anymore unless he signed the form, he made a rational decision to sign. In light of this evidence, the district court's finding that Solano knowingly and intelligently waived his Miranda rights was not clearly erroneous.
 
 
 18
 In sum, Solano's confession was voluntary and his Miranda waiver was knowing, voluntary and intelligent.
 
 II. Downward Departure Under Section 5K2.0
 
 19
 Solano also argues the district court erred in denying his motion for a downward departure under Sentencing Guideline section 5K2.0 because it erroneously believed that it did not have the authority to depart downward based on Solano's agreement to be deported. Section 5K2.0 provides that
 
 
 20
 the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."
 
 
 21
 USSG § 5K2.0.
 
 
 22
 We reject Solano's argument. The district court's denial of Solano's motion was based on its discretionary refusal to depart downward, and not on any erroneous interpretation of its authority to do so. The court was simply unpersuaded by Solano's argument that, because of his unilateral agreement to be deported, he should be given a downward departure under section 5K2.0. He argued he was providing the same benefit to the government that others did who agreed to be deported and who entered into plea agreements. The court, however, noted that Solano refused to enter into the standard plea agreement offered to prior felons by the U.S. Attorney's Office in the district of Arizona.
 
 
 23
 In explaining its decision to deny Solano's motion, the district court stated: "your client chose to reject that agreement and sort of bounce everyone around, as was his right. But I don't have to give him the points now because he thinks he's going to create some sort of benefit to the government." It also stated:
 
 
 24
 [T]he 5K2.0 motion made by the defendant for downward departure is overruled. The agreement that's usually represented to this court is a 5K1.1 motion brought by the government because there's a completed, final agreement before the court where all the parties know their exact rights. All the parties' signatures are on the dotted line, and there's no basis for maneuvering.
 
 
 25
 In this case, the 5K2.0 motion is made on possible things that will be done in the future, that are revocable, that are not set in concrete. The defendant has not signed anything showing it's a non-revocable act on his part, and [I]'m not going to allow the defense to come in the back door and try and obtain ... what they didn't do on the front end, and that is, negotiate in a reasonable fashion and present matters of final completion to the court. And therefore, there's no basis for the motion.
 
 
 26
 The court's statements that "I don't have to give him the points ..." and "[I]'m not going to allow ..." show that it exercised its discretion in refusing to grant a two-level downward departure. The court's statement that "there's no basis for the motion" merely indicated that the court disagreed with Solano's argument that he was similarly situated to other defendants who had benefitted under section 5K1.1 from their plea agreements with the government.
 
 
 27
 We also reject Solano's argument that the district court categorically rejected "substantial savings to the government" as a ground for downward departure in violation of United States v. Charry Cubillos, 91 F.3d 1342 (9th Cir.1996) (citing Koon v. United States, --- U.S. ---, 116 S.Ct. 2035 (1996)). The district court did not categorically reject any ground for downward departure. It merely exercised its discretion not to grant the downward departure in Solano's case.
 
 CONCLUSION
 
 28
 The district court did not err in refusing to suppress Solano's confession made while in custody at the INS office. His confession was voluntary and his waiver of his Miranda rights was voluntary, knowing and intelligent. The district court exercised its discretion in refusing to grant Solano's motion for a downward departure under section 5K2.0. The district court's discretionary refusal to depart downward is unreviewable on appeal. United States v. Estrada-Plata, 57 F.3d 757, 761 (9th Cir.1995).
 
 
 29
 Solano's conviction is AFFIRMED. The district court's sentencing decisions challenged and addressed in this memorandum disposition are affirmed, but Solano's sentence is VACATED and the case is remanded for resentencing for the reasons set forth in the published opinion filed concurrently with this memorandum disposition.
 
 
 30
 Conviction AFFIRMED; sentence VACATED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3